

# BANKRUPTCY MANAGEMENT AGREEMENT

AGREEMENT made, by and between, **Quincy Bedford I, LLC**, **55 Pulaski Realty LLC and Leizer Klar** (hereinafter collectively referred to as the "Client") and FIA Capital Partners, LLC (hereinafter referred to as Companies's nonmember Manager and Restructuring Officer - "Manager").Whereas Client wishes to retain Manager for purposes to provide analysis and Bankruptcy Management services to the Client, relating to asset valuation and negotiations aimed at alleviating distress and/or facilitating the purchase or re-casting of the first commercial mortgage lien and all other debts of the Client with regard to the Properties (the "Project") of the assets located at **22 Hart Street, Brooklyn, New York 11206** and **55 Pulaski Street, Brooklyn, New York 11206**.  Manager's duties on behalf of client shall include but not be limited to the following, it being understood that Manager's performance of any duties hereunder is subject to Client's prior approval:

A. Provide advice and guidance to the Client regarding to all aspects of Bankruptcy, to include, review of information, preparation of all forms and documents, analysis, as well as handle the direct, non-binding negotiations that will facilitate the settlement of debts to include a modification or re-casting of the existing equity or debt financing. Manager will not finalize or execute any purchase, modification or re-casting without written authorization from the company.

B. Subject to Client approval, arrange for the engagement of legal counsel, where such counsel is required for the support and implementation of the strategies being utilized by Manager in connection with the Project (as hereinafter defined). Manager shall inform the Client of the advantages of retaining legal counsel and may provide guidance into the selection of said legal counsel, however, any such representation shall be covered by a separate retainer agreement between the Client and the legal counsel.

C. Manager will perform a comprehensive due diligence review of the company and property including its financial condition, property condition, state of its macro and micro economic market, and competitive position. To accomplish this, our team will begin by reviewing the financial records relating to the property, including, but not limited to, loan docs, leases, management and leasing agreements, budgets, and income projections. Upon mutual agreement as to the necessity, and written agreement, we will then perform an on-site inspection of the property and physical review of the local markets and the larger general market. We will require access to all relevant property specific books, records, and in-house personnel. As necessary, we may require meetings with principals, property managers, and third-party Managers, including but not limited to, attorneys, accountants, brokers, local government employees and officials. We will use data from these investigations and from our financial and property condition report to produce our own financial models. Our analysis will be based on the documents we receive in response to our document request list as set forth in Schedule 1 ("Document Request Checklist"), as well as additional documentation we receive relevant to the Project and physical site inspection.



D. Manager will then arrange a post analysis conference to discuss our findings and present our recommendations to achieve a favorable workout resolution plan.

E. Based upon your decision and with your full consent, we will then draft the Critical Path Method ("CPM") outlining the steps necessary to implement the strategy. The CPM may contain a multi-disciplinarian approach to achieving the resolution and therefore, may require the need for additional third-party resources and expertise (i.e., legal counsel, construction experts, zoning, etc.).

F. Manager will coordinate and intensively manage all the various disciplines and services necessary to achieve the resolution. You will decide whether to utilize any of your existing third-party relationships or whether to make use of our recommended experts.

In the event that the CPM includes the recommendation to re-cast the existing debt on the Property:

A. Manager will provide advice to the Client regarding all aspects of negotiations that will facilitate the re-casting or purchase of the existing debt.

B. If necessary and consented to, Manager will use its best efforts to arrange additional debt/equity on behalf of the Client to complete the recapitalization assignment.

If necessary and consented to, Manager will represent the Client in negotiations concerning all aspects of arranging a joint venture or partial sale of the property to include the new recapitalization inclusive of equity

In consideration of the mutual covenants of this Agreement, the parties agree as follows:

1. **TERM:** The term of this agreement shall commence on the date herein and shall terminate upon the earlier of (i) client's termination of this Agreement or (ii) at the final resolution and closure of the bankruptcy case.  To the extent this Agreement is entered into before the client files its bankruptcy case, this Agreement will continue in full force and effect, unless previously terminated, after the bankruptcy case is filed.  To the extent the client may be required to seek Court approval of this Agreement, client undertakes and agrees to seek such approval of this Agreement from the Bankruptcy Court.

2. **BANKRUPTCY MANAGEMENT FEES:** Client agrees to pay to Manager a Retainer Fee of $25,000.00, which will be paid at time of execution of this agreement and deemed earned.

    A. Thereafter, the Client shall pay to Manager a monthly fee for its services in the amount of $5,000, which shall be due and payable on the first (1st) day of each calendar month, commencing in the first calendar month after execution of this Agreement.



B. A Per Diem Fee for travel to court will be $1,500.00 plus travel expenses. Monthly statements will be provided with any travel expenses for the project. All invoices will be due 10 days after presentation. Manager's Fees shall be a budgeted item in the Debtor's cash collateral/operation budget for the bankruptcy case.

C. A Bonus of 10% of the default interest save. Less the Manager retainer fee and monthly management fees which will be credited toward this amount.

D. In the event of a Bankruptcy Case, all fees due to Manager hereunder shall be included in the Client's budget and a Carve-Out for the payment of such fees shall be approved by any order authorizing the use of cash collateral in such the Bankruptcy Case.

E. The Client agrees to pay all necessary title, appraisal, inspection, recording, and legal costs required in connection with the terms and conditions of any financing commitment accepted by Client.

Payment of all fees and reimbursed out-of-pocket expenses shall be made in care of GC Realty Advisors LLC, Attention: David Goldwasser, per the following wire transfer instructions:

| | |
|---|---|
| Account Name: | FIA CAPITAL PARTNERS LLC |
| Account Address: | 3284 N 29th Ct |
| | Hollywood FL, 33020 |
| Account #: | 665239700 |
| Routing #: | 267084131 |
| Bank Info: | Chase Bank |
| | 22191 S. Powerline Road |
| | Boca Raton, FL 33433 |

3. **DISCLOSURES.**

Except as set forth herein and described in any retention affidavit submitted in the Bankruptcy Case, Manager confirms that none of its principals or professional staff have any financial interest or business connection with Client, and Manager is aware of no conflicts regarding this Agreement. Since Manager is a consulting firm that serves clients both in and out of court, it is possible that Manager may have rendered services to or have business associations with other entities or people which had or have or may have relationships with the Client, including creditors of the Client. In the event the Client accepts the terms of this engagement, Manager will not represent, and Manager warrants that Manager has not represented, the interest of any such entities or people in connection with this matter. Manager shall monitor its records and the Bankruptcy Case for possible conflicts that could arise during the course of the engagement, and Manager will promptly file a disclosure with the Court should any come to Manager's attention. Manager reserves the right to resign from this engagement on written notice of not less than 15 days at any time if conflicts of interest arise or become known to it that, in its judgment, would impair its ability to perform objectively.



However, any withdrawal or resignation shall be reasonably coordinated with the Client in a confidential manner so as to avoid any unnecessary disruption to the Bankruptcy Case.

4. **EARLY TERMINATION**: Client has the right to terminate this Agreement at any time upon five (5) days written notice to the Manager.  Upon issuing such a termination notice, no further payments shall be required even if a payment comes due to Manager during the five (5) day notice period.  To the extent, however, that this Agreement is terminated, all Fees due Manager through the termination date must be paid in full. Client will not be entitled to any credit or refund for prior payments made before the termination notice as sent that apply to periods after the termination of this Agreement. Whenever a given Project is terminated before completion, Manager shall not be entitled to any further compensation.:

5. **PUBLICITY:** The Client agrees to allow the Manager to arrange for the publication, at the expense of the Manager, of one or more stories about the transaction.

6. **AUTHORITY:** The person signing this Agreement certifies that he has the authority as a principal, or as an authorized agent of the Client, to sign this Agreement.

7. **APPLICABLE LAW:** This Agreement shall be construed and enforced in accordance with the laws of the State of New Jersey.

8. **ENTIRE AGREEMENT:** This Agreement constitutes the entire agreement between the parties hereto and supersedes any prior oral or written agreements or understandings. Any modification or amendment to this Agreement must be in writing and signed by both parties.

9. **SUCCESSORS AND ASSIGNS:** This Agreement shall bind and insure to the benefit of Manager and its heirs, executors, successors and assigns and Client and its heirs, executors, successors and permitted assigns.

*SIGNATURES PAGE FOLLOW*



IN WITNESS WHEREOF, the parties have executed this Agreement the day and year expressed below.

Agreed and accepted:

QUINCY BEDFORD I LLC

By:_____
Name: Leizer Klar
Title: Managing Member


55 PULASKI REALTY LLC

By:_____
Name: Leizer Klar
Title: Managing Member

_____
Leizer Klar



FIA Capital Partners, LLC

_____
David S. Goldwasser, Managing Member


Date___10/20/21_____



# Information Review List

### 1) The Project

- Proposed restructuring request (brief summary of the proposed structure as see it.)
- Project description
- Appraisal (if available)
- Rent roll
- Proforma income and expense statement for the next 10 years with additional capital contributions if necessary.
- Historical Operating Statements (3 years)
- Lease(s)
- Plans and specifications
- Aerial photograph (if available)
- Area map
- Preliminary title report
- Market analysis (absorption, competing projects, and competitive rent levels)
- Construction cost breakdown

### 2) The Borrowing Entity

- Financial statements for each entity and property within the entity
- Partnership agreement (if applicable)
- Percent ownership breakdown
- Borrower resume
- List of previous projects developed
- List of properties under management

### 3) The Existing Debt

- Note
- Mortgage
- Second Liens
- Guarantees
- Mezzanine instruments
- Additional Equity agreements

*The above information is required to adequately analyze the project, and to create the best possible presentation for the restructuring.*

*Please note that it is important to have a Financial Statement from all partners with 10% or more interest. In the credit analysis, it will aid in representing that the partnership has sufficient financial strength.*