Frank C. Dell'Amore, Esq.  
Jaspan Schlesinger LLP  
300 Garden City Plaza  
Garden City, New York 11530  
Telephone: (516) 393-8289  
fdellamore@jaspanllp.com  
*Attorneys for Hart and Pulaski Street Lender LLC*

Presentment Date and Time:  
June 10, 2022 at 12:00 p.m.

UNITED STATES BANKRUPTCY COURT  
EASTERN DISTRICT OF NEW YORK  
-----------------------------------------------------X  
In re:

    55 PULASKI REALTY LLC,  
    QUINCY BEDFORD I LLC,

                    Debtor.  
-----------------------------------------------------X

Chapter 11

Case No. 21-42997(NHL)  
Case No. 21-42999(NHL)

## OBJECTION TO THE DEBTORS' MOTION TO EMPLOY AND RETAIN FIA CAPITAL PARTNERS, LLC AND TO APPOINT DAVID GOLDWASSER AS CHIEF RESTRUCTURING OFFICER OF THE DEBTORS PURSUANT TO A PRE-PETITION RETAINER AGREEMENT DATED OCTOBER 20, 2021

Hart and Pulaski Street Lender LLC (the "**Lender**"), a secured creditor of the debtors, 55 Pulaski Realty LLC ("**Pulaski**") and Quincy Bedford I LLC ("**Quincy**," collectively with Pulaski, the "**Debtor**" or "**Debtors**"), in these jointly administered Chapter 11 cases, by and through its counsel, Jaspan Schlesinger LLP, respectfully submits this Objection to the motion filed by the Debtors seeking to employ and retain FIA Capital Partners, LLC ("**FIA**") and to Appoint David Goldwasser ("**Goldwasser**,") as chief restructuring officer of the Debtors pursuant to a pre-petition retainer agreement dated October 20, 2021 (the "**Agreement**"), filed by the Debtors on May 16, 2022 (the "**Motion**"). The Lender respectfully submits that the Motion should be denied for each of the reasons set forth herein below.

**Preliminary Statement**

1.  First, these two jointly administered chapter 11 cases, both of which were filed on December 1, 2021, consist of two, single asset real estate debtors, each owning a single property, at which no substantial business is being conducted other than the business of operating the respective real property and activities incidental thereto. Furthermore, both filings were precipitated on account of the Lender having commenced foreclosure actions, following a series of defaults, which include payment defaults, failure to pay real estate taxes, and maturity defaults in connection with a single mortgage loan encumbering both Debtors' properties. Despite the fact that the Debtors hereby seek to retain the assistance of a restructuring officer, neither case presents any complicated fact pattern, and the Debtors have engaged seasoned counsel.

2.  Since the petitions were filed, very limited steps have been taken to further the reorganization of either Debtor, other than to extend exclusivity and for the relief sought in the Motion.

3.  Particularly troubling is that based upon the Debtors' monthly operating reports, ("**MOR's**"), the only rents which were collected by either Debtor during the more than six (6) months since this case has been pending, was one month of rent collected (for the month of March 2022) from the Hart Street property *only* in the total sum of $5,590.00. Indeed, the Debtors have completely failed to report the collection of any additional rents from either of the Properties since the Filing Date.

4.  As a result of the Debtors failure to collect rents, it is no surprise that the Debtors have also completely failed to pay <u>any</u> property taxes since August 2018 on either of the Properties, including taxes that became due post-petition.

5. Next, the Debtors have completely failed to make <u>any</u> payments to the Lender since May 2, 2018, and both loans fully matured by their terms on March 1, 2019.

6. Furthermore, no substantive settlement discussions have transpired between the Lender and the Debtors since February 15, 2022, when the Debtors agreed on a consensual path forward with the Lender including a discounted payoff amount, but thereafter failed to meaningfully respond or engage with the Lender or take any actions in furtherance of a consensual reorganization. Indeed, the Debtors further failed to accept or reject a settlement agreement provided to them by the Lender in February 2022.

7. Thus, with no money being generated by the Debtors' respective estates, it is especially unclear (i) who the Debtors expect to pay FIA's exorbitant fees, and (ii) what, if any benefit, FIA has been, or could bring to the estates, other than a substantial administrative expense.

8. In point of fact, upon entry of an order approving the Motions, the Debtors will immediately become indebted to FIA and Goldwasser in the amount of $65,000.00, with no apparent benefit to the Debtors or the estates, which is in addition to the administrative expenses that Debtors have already incurred by its counsel. By way of the Agreement, the Debtors obligations to FIA, will continue to accrue at a minimum amount of $5,000.00 per month, for as long as these cases are pending, giving an incentive to Debtors, FIA and/or Goldwasser to string these cases along for many more months. From what little we do know, FIA has done little to manage the affairs of the Debtors, and there is no need for a management fee when the Debtors are unable to maintain such essential payments such as their property tax obligations, and from the Motion it remains unclear why the Debtors' 100% equity interest holder is unable to manage the

affairs of the Debtors, or what additional value FIA is able to bring to the Debtors' estates, other than additional debt.[1]

9. Thus, it appears that the Motion is nothing more than a strategic attempt by the Debtors to thwart any effort by Lender to take the lead in formulating its own reorganization of the Debtors estates, which should not be countenanced.

10. Indeed, the Debtors have failed to articulate a sound business justification to use property of the estate to fund the retention and employment of FIA and Goldwasser, especially considering the fact that role of said parties in this case remains a mystery. The Debtors' estates are administratively insolvent, and the Motion fails to set forth how the retention of FIA and Goldwasser could assist the Debtors' successful emergence from bankruptcy in view of the fact that FIA has been operating on behalf of the Debtors for the last six (6) months.

11. Finally, from a review of the Motion, FIA's engagement will do nothing to advance these cases, and, in fact, places the Debtors business judgment in question, by suggesting that they should be permitted to take on more debt than they have any realistic ability to pay. As a result, the Motion should be denied in its entirety.

**Background**

12. On December 1, 2021 (the "**Filing Date**"), the Debtors each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in this Court (collectively, the "**Petitions**").

13. The Petitions each acknowledge that the Chapter 11 Cases are single asset real estate cases.

---

[1] This presumes that FIA was not a pre-petition creditor of the Debtors, with an unwaived conflict.

4

14. The Debtors continue in possession of the real properties located at 55 Pulaski Street, Brooklyn, New York, (Section 6, Block 1770, Lot 67) ("**Pulaski Street**") owned by Pulaski and 22 Hart Street, Brooklyn, New York (Section 6, Block 1770, Lot 18) ("**Hart Street**", together with Pulaski Street, the "**Properties**") owned by Quincy, respectively.

15. On or about February 14, 2014, Debtors executed in favor of Customers Bank a Mortgage Note dated February 14, 2014, in the original principal amount of $2,187,300.00 (the "**Note**").

16. To secure repayment of the indebtedness evidenced by the Note, Debtors executed a Mortgage dated February 14, 2014 (the "**Mortgage**", and together with the Note and all other documents evidencing the Loan, the "**Loan Documents**"), which encumbered the Properties in the original principal sum of $2,187,300.00. The duly executed Mortgage was recorded with the Office of the City Register of the City of New York (the "**City Register**") on February 26. 2014 under CRFN: 2014000069950.

17. The Debtors defaulted under the Note and Mortgage as a result of their failures to: (i) timely pay in full all principal, interest, and other amounts as and when due on and after the Maturity Date of March 1, 2019; (ii) pay real estate taxes, water/sewer charges, and ECB violations assessed against the Properties in 2018 and 2019 exceeding $10,000.00 in the aggregate; (iii) remit and turnover to Customers and Secured Creditor all rents collected from the Properties on and after the Maturity Date; and, (iii) otherwise comply with additional covenants contained in the Note and Mortgage (collectively, the "**Default**").

18. By letter dated March 18, 2019, as a result of the Default, Customers Bank sent Debtors a Notice of Maturity Default and Demand for Payment which, among other things,

formally provided notice of the Default to Debtors and demanding that Debtors immediately remit the full amount due under the Note and Mortgage.

19. On April 25, 2019, Customers Bank commenced an action to foreclosure the Mortgage in the Supreme Court of New York, County of Kings ("**State Court**") under Index No. 509175/2019 (the "**Foreclosure Action**").

20. On or about May 17, 2019, the Note, Mortgage and all other documents associated with the Loan were assigned to Lender by Customers Bank pursuant to an Allonge to Promissory Note and Assignment of Mortgage.

21. On or about December 5, 2019, the State Court issued an Order Extending Time for Service and for Service by Publication, to Substitute the Plaintiff and the Amended the Caption pursuant to which Lender was substituted as the named plaintiff in the Foreclosure Action.

22. On or about September 21, 2021, the State Court issued a Decision an Order in which, among other things, granted Lender's motion for the appointment of a referee to determine the amounts due to Lender pursuant to the Loan Documents.

23. Shortly thereafter, the Debtors filed these Chapter 11 Cases, resulting in a stay of the Foreclosure Action.

24. The Chapter 11 Cases are being jointly administered pursuant to an Order Directing Joint Administration of Related Chapter 11 Cases dated January 7, 2022.

25. As of the Filing Date, Lender was owed $4,068,687.35 from Debtors pursuant to the Notes and Mortgages, as evidenced by the: (a) Proof of Claim filed on March 15, 2022, as Claim No. 3-1 in Pulaski's bankruptcy case; and (b) Proof of Claim filed on March 15, 2022, as Claim No. 3-1 in Quincy's bankruptcy case.

26. Shortly after the Filing Date, Lender and Debtors began discussing a possible

resolution of this matter. In February 2022, those discussions resulted in a verbal understanding as to an agreement that would resolve Lender's claims against the Debtors in their entirety. Lender then prepared a written agreement containing the terms discussed between the parties and sent it to Debtors for their review and comment. However, the Debtors have not provided any comments to the written agreement prepared by Lender and have taken no further action to advance this case or to implement the terms of the verbal resolution reached between Lender and Debtors.

## Objection

27. The Motion seeks to employ and retain FIA and appoint Goldwasser as the Debtors' chief restructuring officer in accordance with the Agreement pursuant to Section 363(b)(1) of the United States Bankruptcy Code, which provides, in relevant part, that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1) (2022).

28. In order to justify the use of property of the estate other than in the ordinary course of business, "there must be some articulated business justification" by the Debtors to support such use. *See In re Lionel Corp.*, 722 F.2d 1063, 1070 (2d Cir. 1983).

29. The Motion generally asserts that that the purpose of the application is so that FIA and Goldwasser can assist the Debtors in administrating these cases, oversee the preparation of Chapter 11 reporting, pursue negotiations with Lender, and assist with formulation of a plan of reorganization.

30. The Motion does not articulate any purported justification to use estate property to employ FIA and Goldwasser, other than the vague allegation that "[t]he decision to seek a CRO is based on the sound exercise of the Debtors' business judgment and lends an experienced and objective voice to the process." *See* Motion, ¶ 13

31. The Debtors are already represented by counsel in these cases and there is simply no justification to use estate property to retain and employ FIA and Goldwasser to perform the same services that are, and should be, performed by counsel.

32. Moreover, the Motion is particularly troubling because of the fact that the operating statements filed to date show that the Debtors have not generated any meaningful income in the entirety of the time that this case has been pending. Despite this, the Debtors somehow believe that it is appropriate for this Court to bless compensation to FIA and Goldwasser of (i) an upfront retainer of $25,000.00, plus (ii) a monthly fee of $5,000.00, which has been accruing as of November 1, 2021 for a combined sum of $65,000.00 as of the date this Motion will be returnable, plus (iii) an additional bonus[2] to FIA of ten (10%) percent of any default interest saved on account of a settlement with the Lender.[3]

33. Considering the Debtors' complete failure to generate any meaningful income, and their apparent unwillingness to honor its verbal agreement reached with Lender several months ago to resolve these matters, there is no conceivable way in which the Debtors could comply with their pre and post-petition obligation to FIA and Goldwasser. Yet, the Debtors nevertheless seek to retain and compensate FIA to the tune of $65,000.00 (which amount will continue to grow) which calls into question the Debtors' business judgment.

34. The Debtors have failed to articulate a sound business justification to use to estate property to fund the exorbitant compensation being sought by FIA and Goldwasser to perform services that are duplicative of those being performed by Debtors' counsel, especially while the Debtors have utterly failed to generate any meaningful income during the pendency of these cases.

35. As such, Lender respectfully submits that the Motion should be denied in its

---

[2] Lender acknowledges that the bonus may be offset against the Management Retainer Fee and the Monthly.

[3] Based on the Lender's discussion with the Debtors, it is conceivable that this additional bonus could be substantial.

entirety.

**WHEREFORE,** Lender respectfully requests that the Motion be denied, together with such other and further relief as is just and proper under the circumstances.

Dated: Garden City, New York
      June 10, 2022

> JASPAN SCHLESINGER LLP
> *Attorneys Hart and Pulaski Street Lender LLC*
>
> By: _____
> Frank C. Dell'Amore
> 300 Garden City Plaza
> Garden City, New York 11530
> (516) 393-8289