UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
In re:                                             Chapter 11

55 PULASKI REALTY LLC,                             Case No. 21-42997 (NHL)
QUINCY BEDFORD I LLC,                              Case No. 21-42999 (NHL)

                           Debtors.          Jointly Administered
---------------------------------------------------------------x

## DEBTORS' OPPOSITION TO MOTION OF HART AND PULASKI STREET LENDER LLC TO CONVERT CASES TO CHAPTER 7

      55 Pulaski Realty LLC and Quincy Bedford I LLC (collectively the "Debtors"), by and through their counsel, as and for their Opposition to the motion of Hart and Pulaski Street Lender LLC (the "Lender") seeking to convert these Chapter 11 cases to Chapter 7 pursuant to 11 U.S.C. §1112(b) (ECF No. 48) (the "Motion"), respectfully represents and shows this Court as follows:

**Overview**

      1.     The Debtors commenced these Chapter 11 cases with the goal of challenging pre-petition default interest based upon the Lender's purposeful delays in proceeding in a state court foreclosure following maturity of the underlying mortgage debt in April 2019. The Lender's lack of vigor was done with full knowledge that interest was accruing at a rate of 24% per annum. At the time of maturity, the mortgage was current, and the total principal balance was a relatively manageable $2,021,850.12. The Lender quickly bought the note within a month or so of maturity and thereafter showed little inclination to proceed promptly under a thinly veiled strategy to "bleed-out" the remaining equity in the Properties through mounting default interest charges. Indeed, the Lender has asserted a highly disputed claim in bankruptcy in the sum of more than $4,068,687.35 almost half of which ($1,879,393.41) constitutes default interest alone.

2. However, the Lender's entitlement to default interest remains subject to challenge in bankruptcy in the aftermath of the State Court decision dated October 14, 2021 which granted summary judgment as to liability, but refused to enter a default judgment against the Debtors, and granted leave to defend the action and contest the computation of principal, interest and other fees. A copy of this State Court decision is annexed hereto as <u>Exhibit</u> "A".

3. There are no *Rooker/Feldman* implications as to contesting the proper amounts owed to the Lender, making default interest fair game for litigation. Indeed, the disputes surrounding default interest were discussed with the Court earlier in the Chapter 11 cases, at which time the Court referred the parties to its prior decision in *In re Heavey*, 608 B.R. 341 (Bankr. E.D.N.Y. 2019). In *Heavey*, this Court denied the lender's motion for summary judgment on the issue of pre-petition and post-petition default interest to take into account equitable considerations based upon potential wrongful conduct, noting that foreclosure is fundamentally an equitable proceeding, and the Court has discretion under CPLR 5001 relating to the computation of interest.

4. Cognizant of the potential costs and delays attendant to protracted litigation over default interest, the parties entered into negotiations and, in the Debtors' view, reached an agreement in principle on a discounted payoff to be made in relatively short order in connection with a refinancing of the Properties, failing which the Plan would then toggle to a sale and transfer of the Properties to the Lender in consideration for the Lender's agreement to fund plan payments to administrative expenses and other creditors. A similar toggle plan has been successfully confirmed and consummated with affiliates of the Lender in another case, *In re 1234 Pacific Management LLC*, Case No. 119-40026-NHL

5. While in recent weeks the Lender has become frustrated with the pace of implementation of the proposed settlement, the Debtors have now recruited a new investor,

2

Benjamin Sternberger, who has received initial approval for a total refinancing of $3,369,000 from Ark Mortgage. The Lender's motion to convert is likely born out of this frustration, but the plan process is clearly now on track, and the Debtors have formally filed a proposed plan of reorganization (ECF No. 50) (the "Plan") that provides alternate treatment to the Lender. A copy of the Plan is annexed hereto as Exhibit "B".

6. At bottom, the Plan provides for the proceeds of the Refinancing as may be augmented by a New Value contribution, to be used to fund a total payment of $3,250,000 to the Lender and pay of all allowed Administrative Expenses, Priority Tax Claims, and Receiver's fees and expenses, plus establish a general creditor fund in the sum of $25,000 for a *pro rata* distribution.

7. In the event that the Refinancing is not completed by the August 31, 2022 deadline, the Plan then automatically "toggles" to a sale and transfer of the Debtors' Properties to the Lender or the Lender's designee, free and clear of all liens, claims and adverse interests pursuant to 11 U.S.C. §§ 363(b) and (f) and 1123(b)(5)(B), in which event the Lender shall become the Plan funder and make the required payments to the other creditors in consideration of the transfer of the Properties.

8. The Debtors are working on the Disclosure Statement which will be filed before the return date of the Motion, giving the Debtors a meaningful chance of confirming the Plan within a reasonable period of time. *See, e.g., In re Emerald Grande, LLC*, 2018 WL 2703071, at *3 (Bankr. N.D.W.Va. June 4, 2018) (finding cause does not exist where Debtor has made progress toward confirmation, noting that "Although it is uncertain whether the Debtor can obtain confirmation of a plan and ultimately be successful post-bankruptcy, the court finds its performance . . . to warrant it remaining in Chapter 11. Notably, this case is nearing its logical end,

as the Debtor will either obtain confirmation within a reasonable time or it will not."). Yet, ignoring the prior negotiations toward achieving a consensual plan of reorganization, the Lender has curiously moved to convert these cases to Chapter 7 in another gambit to attempt to control the sale process for its benefit. However, conversion is not a proper remedy here for a number of reasons. First, conversion is generally should not be used to facilitate a sale of highly leveraged assets in bankruptcy for the sole benefit of secured creditors. Secured creditors can fend for themselves in foreclosure [typically through stay relief or dismissal] while the appointment of a Chapter 7 trustee is reserved for cases where there is an opportunity to provide benefits to other creditors.

9. Second, the prospect of a successful sale is limited in Chapter 7, particularly if the Lender presses default interest. In Chapter 7, the Lender will invariably seek to credit bid on the Properties, which in turn negatively impacts a Chapter 7 trustee's right to commissions, which are only recoverable based on actual disbursements. *In re Pink Cadillac Assocs.*, 1997 WL 164282 (S.D.N.Y. Apr. 8, 1997); *In re Lan Assocs. XI, L.P.*, 192 F.3d 109 (3d Cir. 1999). In view of credit bid rights, the Debtors' estates would likely become administratively insolvent in Chapter 7, prompting the Properties to potentially be abandoned. Moreover, the sale will lose the benefit of the transfer tax exemptions in 11 U.S.C. §1146(a), which is only available in Chapter 11.

10. Third, there is no pressing cause for conversion, since the non-payment of post-petition real estate taxes is relatively nominal. The amounts in question are roughly $1,000 per quarter per property, or about $6,000 in total through August 31, 2022. The Plan provides that all taxes will be paid through the refinancing. This is not to say that real estate taxes should not be paid, but given the amounts involved and the terms of the Plan, conversion is not warranted.

11. Fourth, the Motion procedurally defective in that the Lender did not serve the Motion properly, providing only eighteen (18) days' notice instead of the required twenty one (21) days (plus three days for service by mail) under Bankruptcy Rule 2002(a)(4). Thus, for a multitude of reasons, conversion is not warranted, and the Motion should be denied.

## Background

12. The Debtors are the owners of neighboring residential multi-family walk-up buildings located at 22 Hart Street, Brooklyn, NY and 55 Pulaski Street, both in Brooklyn, NY (collectively, the "Properties"). The Hart Street property is owned by Quincy Bedford I LLC and consists of a two-story building with four residential units. The Pulaski Street property is owned by 55 Pulaski Realty LLC and consists of a three-story building with three residential units.

13. The Properties are subject to a single spreader mortgage in the original principal sum of $2,187,300 (the "Mortgage") securing a five-year note which was issued by Customers Bank in 2014. The Mortgage was consistently paid on time by the Debtor through the maturity date and for a period thereafter.

14. Customers Bank commenced a foreclosure action in the Supreme Court on April 25, 2019 immediately following maturity, and quickly sold the Mortgage to the Lender in May 2019. A Receiver was appointed in July 2019 and took control of the rents and leases at the Properties.

15. The foreclosure action then sat virtually dormant while the Mortgage continued to accrue interest at the 24% default rate, and the Lender took no meaningful steps to prosecute its claims.

16. In the meantime, the Debtors took issue with service of the foreclosure complaint, and, in fact, obtained the October 14, 2021 Order denying the Lender's motion for a default judgment against the Debtors and permitting the filing of an answer by the Debtors.

17. Shortly thereafter, the Debtors each filed a separate voluntary petition under Chapter 11 of the Bankruptcy Code on December 1, 2021 and continue in possession of their respective Properties as debtors-in-possession pursuant to 11 U.S.C. §§1107 and 1008. An Order directing the joint administration of these cases was entered on January 7, 2022 (ECF No. 18).

18. Although the Referee has filed a proof of claim in the amount of $26,754 for services rendered in the foreclosure action, no report has been filed by the Receiver and no rents have been turned over to the Debtors under 11 U.S.C. §543.

**The Cases Should Not Be Converted**

19. The Lender seeks conversion pursuant to 11 U.S.C. §1112(b) for alleged cause. Although the Lender raises several issues, the primary impetus for the Motion is the delay in filing the Plan. The Debtors had hoped to file the Plan earlier, but they have not taken an inordinate amount of time in doing so. The Chapter 11 cases are about seven (7) months old, and the Debtors required time to retransition the Properties from receivership. Indeed, confusion still abounds at the Properties regarding payment of rents and the tenants are taking advantage of the situation by refusing to pay anyone. Conversion certainly would only add to this struggle.

20. Equally important, the Debtors did not believe it prudent to file a plan without a refinancing at least in play, which has now taken root, based upon the involvement of the new investor, who will assist the Debtors in qualifying for the refinancing, which balances everyone's interests by giving the Debtors a fair opportunity to retain the Properties while providing the Lender with a relatively sizeable payment on interest.

21. Further, the Plan avoids all litigation over default interest and the concerns raised in *Heavey*, while also protecting the Lender by fixing a hard deadline by which the Lender must be paid or title to the Properties will be transferred to the Lender. In sum, the prospect of a "toggle" Plan provides a better resolution of the cases than either conversion or stay relief to continue a disputed foreclosure action.

22. To re-emphasize, while the Lender makes much of the fact that post-petition real estate taxes have not been paid, amounting to about $6,000, the Debtors recognize the importance this obligation and remain committed to paying all taxes promptly.

23. The Lender also objects to the proposed retention of David Goldwasser and his firm, FIA Capital Partners, LLC, as chief restructuring officer to the Debtors. This objection is not a basis for conversion, and the objection is without merit. Mr. Goldwasser has important financial expertise in dealing with distressed assets and his services will be important in generating information needed to compete the refinancing and operating reports, improving collections at the Properties, and further negotiations with creditors as necessary.

24. Despite earlier delays, the Debtors have a well-structured exit strategy that establishes a viable framework for confirmation. Accordingly, the Motion should be denied, or at most adjourned and carried while the confirmation process unfolds.

WHEREFORE, the Debtors respectfully pray that the Lender's Motion be denied.

Dated: New York, NY
June 21, 2022

> Goldberg Weprin Finkel Goldstein LLP
> *Attorneys for the Debtor*
> 1501 Broadway, 22nd Floor
> New York, NY 10036
> (212) 221-5700
>
> By:    /s/ J. Ted Donovan, Esq.