At an IAS Term, Part Comm 6 of the Supreme Court of the State of New York, held in and for the County of Kings, at the Courthouse, at Civic Center, Brooklyn, New York, on the 29th day of September, 2021.

P R E S E N T:

HON. LAWRENCE KNIPEL,

                                       Justice.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

HART AND PULASKI STREET LENDER LLC,

                                       Plaintiff,

                - against -                       Index No. 509175/19

QUINCY BEDFORD I LLC, 55 PULASKI REALTY LLC, LEIZER KLAR, if he be living, and if he be dead, his Executors, Administrators, Heirs at Law, Next of Kin, Distributees, Legatees, Devisees, Grantees, Assignees, Judgment Creditors, Receivers, Trustees in Bankruptcy, Trustees, Committees, Lienors and Successors in Interest and his Husband's, Wife's or Widow's, Executors, Administrators, Heirs at Law, Next of Kin, Distributees, Legatees, Devisees, Grantees, Assignees, Judgment Creditors, Receivers, Trustees in Bankruptcy, Trustees, Committees, Lienors and Successors in Interest, if any, and all persons claiming by, through and under any of them, all of whom and whose names are unknown to plaintiff, STATE OF NEW YORK, THE UNITED STATES OF AMERICA, NEW YORK CITY ENVIRONMENTAL CONTROL BOARD, NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE, THE PEOPLE OF THE STATE OF NEW YORK, NEW YORK CITY DEPARTMENT OF FINANCE, JOSEPH TALMAN, BARON SAKIEF, CHRISTIAN VILLALBA, DEAN PELLE, SHARIEF NESBITT, LEAH EHRENTHAL, ELCHNON EHRENTHAL, SHLOMA JACOBOWITZ, SHAINDEL FRIED, DAVID FRIED, EBONY SINGLETON, AYANNA FERGUSON,

                                       Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| The following e-filed papers read herein: | NYSCEF Doc Nos. | |
|---|---|---|
| Notice of Motion/Order to Show Cause/ Petition/Cross Motion and Affidavits (Affirmations) Annexed | 98-115 | 128-139 |
| Opposing Affidavits (Affirmations) | 129-139 | 141-143 |
| Reply Affidavits (Affirmations) | 141-143 | |

Upon the foregoing papers in this action to foreclose a commercial mortgage on the properties at 22 Hart Street in Brooklyn (Block 1770, Lot 18) and 55 Pulaski Street in Brooklyn (Block 1770, Lot 67) (Properties), plaintiff Hart and Pulaski Street Lender LLC (Lender or plaintiff) moves (in motion sequence [mot. seq.] three) for an order: (1) granting it a default judgment against all non-appearing and non-answering defendants, pursuant to CPLR 3215; (2) appointing a referee to compute and report the amount due to it, pursuant to RPAPL 1321; and (3) amending the caption.[1]

Defendants Quincy Bedford I LLC (Quincy or borrower), 55 Pulaski Realty LLC (Pulaski or borrower) and Leizer Klar (Klar or guarantor) (collectively, defendants) cross-move (in mot. seq. five) for an order, pursuant to CPLR 2004, 2005, 3012 (d), excusing their delay in answering the amended complaint and extending their time within which to answer the amended complaint.

---

[1] Although Lender requests that the caption be amended in its notice of motion (see NYSCEF Doc No. 98), Lender's motion papers do not address this branch of its motion.

## Background

On April 25, 2019, Customers Bank (Customers) commenced this foreclosure action by filing a summons, a verified complaint and a notice of pendency against the Properties. According to Customers' affidavits of service in the record, the borrowers were both served with process on May 24, 2019, by delivery to the New York Secretary of State. By a December 5, 2019 decision and order, the court (Vaughan, J.) granted plaintiff's motion extending the time for service and authorizing service by publication upon defendant Klar and amending the caption to substitute Lender for Customers as plaintiff. On December 23, 2019, Lender filed a supplemental summons and an amended complaint.

The amended complaint alleges that on or about February 14, 2014, borrowers Quincy and Pulaski executed and delivered a $2,187,300.00 mortgage note in favor of Customers, which was secured by a mortgage on the Properties (amended complaint at ¶¶ 14 and 16). To further secure payment under the note, the mortgage allegedly includes a security interest in all equipment, leases and rents. Further, borrowers executed an assignment of rents and Klar executed a personal guaranty. The amended complaint alleges that "[p]laintiff is the current holder and owner of the Loan Documents and is in possession of the original Note and original Mortgage" (*id.* at ¶ 29). The amended complaint further alleges that:

> "The Borrower[s] and Guarantor are in default under the Loan Documents as a result of their failures to: (i) timely pay in full all principal, interest, and other amounts as and when due on and after the Maturity Date of March 1, 2019; (ii) pay real estate taxes, water/sewer charges, and ECB violations assessed

3

against the Mortgaged Property in 2018 and 2019 exceeding $10,000.00 in the aggregate; (iii) remit and turnover to Mortgagee all Rents collected from the Mortgaged Property on and after the Maturity Date; and, (iii) otherwise comply with additional covenants contained in the Loan Document."

The amended complaint asserts five counts for: (1) foreclosure on the Properties; (2) foreclosure of plaintiff's security interest in the collateral; (3) possession of the Properties and the collateral; (4) appointment of a receiver; and (5) a money judgment against defendant Klar, the guarantor.

On January 7, 2020, the City of New York Department of Finance filed a notice of appearance. By a February 4, 2020 amended order, this court extended plaintiff's time to serve defendant Klar by publication within 30 days. According to plaintiff's affidavit of publication in the record, Klar was served by publication in the Brooklyn Daily Eagle on February 14, February 21, February 28 and March 6, 2020. All defendants, including the borrowers and Klar, failed to answer or otherwise respond to the amended complaint.

On January 27, 2021, a court conference was held in this action to determine whether the parties were affected by the COVID-19 pandemic. Klar, the guarantor and the sole principal of the borrower corporations, appeared at the conference pro se and claimed that he recently learned of the pendency of the action.

*Lender's Motion for an Order of Reference*

On June 11, 2021, Lender moved for a default judgment against all non-answering and non-appearing defendants, including the borrowers and Klar, and an order of reference. Lender submits an affidavit of merit from Thomas Hooker (Hooker), its manager, who

attests to the borrowers' execution of the February 14, 2014 note and mortgage and Klar's execution of the personal guaranty. Regarding standing, Hooker attests that "[t]he Note and Mortgage were assigned to Lender by an Assignment of Mortgage effective as of May 17, 2019 from Customers to Lender and the Note was indorsed in favor of Lender by an Allonge to Promissory Note effective as of May 17, 2019." Hooker further attests that "Lender is in possession of the original Note."

Hooker attests that "[i]n connection with the assignment of the Loan to Lender, Customers delivered to Lender an Affidavit of Kimberly A. Stack, Sr. Vice President Assistant Director of SAG of Customers Bank, sworn to on May 16, 2019 ('Stack Affidavit') and a payment history of the Loan . . ." Regarding the borrowers' alleged payment default, Hooker attests that:

> "As evidenced by the Stack Affidavit and Payment History, Borrowers are in default under the Note and Mortgage as a result of its failures to: (i) timely pay in full all principal, interest, and other amounts as and when due on and after the Maturity Date of March 1, 2019; (ii) pay real estate taxes, water/sewer charges, and Environmental Control Board] violations assessed against the Mortgaged Property in 2018 and 2019 exceeding $10,000.00 in the aggregate; (iii) remit and turnover to Customers and Lender all rents collected from the Mortgaged Property on and after the Maturity Date; and, (iii) otherwise comply with additional covenants contained in the Note and Mortgage."

Lender submits copies of the Stack Affidavit and the Customers payment history, which was incorporated into Lender's business records. Stack attested that "[t]he date of the last payment received and applied on the Loan was April 16, 2019" and that as of May 17,

2019, $2,067,070.94 is due and owing under the loan consisting of a principal balance of $1,965,788.19, accrued interest of $100,963.52 and late charges of $319.23.

### *Defendants' Opposition and Cross Motion*

On August 12, 2021, defendants opposed Lender's motion for a default judgment against them and cross-moved for leave to file a late answer, pursuant to CPLR 2004, 2005 and 3012 (d). Klar submits an affidavit attesting that:

> "I did not previously appear in this foreclosure action because I had no knowledge that it was commenced against me and against [the borrowers]. [The borrowers] did not receive correspondence from the Secretary of State, and I was never served with any documents pertaining to this matter. I only learned of the case from my business associates around January 10, 2021, when I found out about the Covid Conference.

> \* \* \*

> "Once COVID-19 started, all offices were closed, including my office, I had no access to the paperwork in the office and I could not operate the business as it was before COVID-19 or resolve issues with the Lender. I never received any communications from the Lender or its successor during the year of 2020.

> "Once I discovered that the foreclosure action was commenced by a company other than the Lender, HART AND PULASKI STREET LENDER LLC, I appeared at the Covid-19 conference on January 14, 2021, by phone myself.

> "I was not represented by an attorney, and I did not understand what was happening during the conference call, but I diligently wrote Plaintiff's attorney phone number down intended to call them right after the conference. Unfortunately, the Covid-19 restrictions were still in place, I still did not have access to my office, and I was trying to save my real estate business

6

resolving different issues daily working remotely over the phone.

"Last year, in the midst of the pandemic, I lost my father. I became very engaged with this new family emergency and had to organize his funeral and resolve a lot of estate issues as well as taking care of my widowed mom which caused me to be even more distracted from my business operations

"Once the Covid-19 restrictions were lifted, my office opened, and I returned to almost normal operations, I contacted the Plaintiff's attorney right away on June 9, 2021."

Essentially, Klar asserts that he failed to timely answer because he did not receive the summons and amended complaint and he suffered personal hardships during the COVID-19 pandemic.

Regarding the merits, Klar asserts that the borrowers "duly paid all amounts alleged due under [the] Mortgage Note . . . until the Lender, Customers Bank, blocked the Borrowers out of their account and closed the option to commence payments." Klar asserts that "I honestly paid all monthly payments for five years, which included principal and interest, so the principal balance of the loan was reduced to $1,965,788.19 Dollars, on the date when I was blocked from my account and could not proceed with payments in April of 2019." Klar also attests that he made several requests for detailed information regarding the loan, including a payoff, and that plaintiff's counsel finally sent him a payoff letter in July 2021 "that is beyond any conscience." Klar challenges plaintiff's calculations in the payoff letter of the principal balance of the loan, the accrued interest and plaintiff's attorney's fees.

Defendants submit a proposed answer in which they deny the material allegations in the amended complaint and assert affirmative defenses, including lack of personal jurisdiction and lack of standing. Defendants' proposed answer also contains a counterclaim alleging that plaintiff breached its duty of good faith and fair dealing "by applying [an] extensive . . . interest rate of 24% to the outstanding amount of the loan, which is not a term in the Note" and that "Defendant is entitled [to] recalculation of the outstanding principal balance in compliance with the terms of the Note and all interest shall be computed under 3.75% interest rate" (proposed answer at ¶¶ 13-14).

Notably, while Klar attests in his affidavit that he was "blocked" from making payments in April 2019, defendants' proposed counterclaim inconsistently alleges that "Plaintiff accepted monthly payments in April of 2019, a month after the maturity date reflected on the Note, as the payment history reflects, therefore, Plaintiff waived its right to call the Note in default thereafter" (*id.* at ¶ 17).

*Lender's Opposition to the Cross Motion and Reply*

Lender, in opposition to the cross motion, argues that defendants "completely failed to meet their burden in demonstrating any legal basis to permit their untimely answer, which they seek to interpose well over two years after this action was commenced, and after Defendants were properly, and repeatedly served with process." Lender asserts that the defendant borrowers were duly served through the Secretary of State on May 24, 2019, long before the COVID-19 pandemic, and that Klar was served by publication as ordered by this court. Lender notes that "although the Guarantor appeared in this action at a court

conference, on behalf of the LLC Defendants and himself, more than seven (7) months ago, the Defendants have completely failed to take any action since that time . . ." Lender asserts that "Defendants provide no explanation as to why, between January 27, 2021, and the filing of the Cross-Motion on August 12, 2021, they were unable to appear or file an answer in this action."

Lender also argues that "[i]t is clear that Defendants were aware of this action, which is demonstrated by their efforts to obstruct the Court-Appointed Receiver's ability to collect rents." Lender submits an affidavit from Gregory Laspina, the receiver (Receiver), in support of his July 30, 2021 application (in mot. seq. 4) to retain and employ a landlord-tenant attorney and to punish Klar for contempt. The Receiver attested that on February 5, 2021, he served a Notice to Attorn on defendants and, upon information and belief, Klar "has instructed tenants not to attorn to me, as Receiver, as required by the Receiver Order." Lender also submits a July 30, 2021 affidavit from Barton Schwartz, the managing agent for the Receiver, who attested that "[s]ome of the tenants at the Hart Street Property have informed me that Klar has instructed them not to pay rent to me or the Receiver and they have paid rent directly to Klar" and "[i]nitially, Klar told the tenants that this receivership is illegitimate and then he falsely told the tenants that this action has been resolved."

Lender argues that Klar's "conclusory," "vague and self-serving" statements that defendants did not receive notice from the Secretary of State, that he was never served with process and that he only learned of the action in January 2021 from an unidentified

9

"business associates" should be disregarded. Lender argues that "[s]ince Defendants failed to demonstrate a reasonable excuse for the default, the Court need not go any further and does not have to determine whether a meritorious defense exists."

Lender argues that defendants have failed to demonstrate a meritorious defense to this foreclosure action. Lender notes that while defendants seemingly challenge Lender's allegations of a payment default, "Defendants do not dispute their default, and only present arguments regarding the date that the default occurred." Lender asserts that "[n]owhere in his affidavit does Guarantor [Klar] argue or submit any evidence that he paid the amounts due on the Maturity Date or that he paid the real estate taxes, water/sewage charges, and ECB violations assessed against the Mortgaged Property." Lender notes that "[a]ll of Defendants' purported meritorious defenses rely on Defendants' assertion that amounts owed are incorrect, based upon a payoff letter." Lender argues that "a dispute as to the amount owed is not a valid defense to a foreclosure action" and "Defendants may submit their evidence of what they believe the amounts due are to the Referee."

## Discussion

### (I)

### *Defendants' Cross Motion*

CPLR 3012 (d) provides that:

> "(d) Extension of time to appear or plead. Upon the application of a party, the court may extend the time to appear or plead, or compel the acceptance of a pleading untimely served, upon such terms as may be just and upon a showing of reasonable excuse for delay or default."

10

"In light of the public policy favoring the resolution of cases on their merits, the Supreme Court may compel a plaintiff to accept an untimely answer (*see* CPLR 2004, 3012 [d]) where the record demonstrates that there was only a short delay in appearing or answering the complaint, that there was no willfulness on the part of the defendant, that there would be no prejudice to the plaintiff, and that a potentially meritorious defense exists" (*Yongjie Xu v JJW Enterprises, Inc.*, 149 AD3d 1146, 1147 [2017]).

Under the circumstances presented here, where the majority of the delay was the result of hardships and family illness during the COVID-19 pandemic, the case is in its early stages and there is no discernable prejudice to Lender, defendants' motion to excuse their delay in answering the amended complaint and extending their time within which to do so is granted in this court's discretion (*Leogrande v Glass*, 106 AD2d 431, 432 [1984] [holding that order compelling plaintiff to accept late answer was properly granted by the court as a matter of discretion]).

(2)

### Lender's Motion for an Order of Reference

"When seeking an order of reference to determine the amount that is due on an encumbered property, a plaintiff must show its entitlement to a judgment [which] may be shown . . . by the plaintiff showing entitlement to summary judgment . . ." (*U.S. Bank N.A. v Miller*, 49 Misc 3d 1205 (A), * 5 [Sup Ct, Kings County 2015] [citing RPAPL § 1321;

11

1-2 Bruce J. Bergman, Bergman on New York Mortgage Foreclosures § 2.01 (4) (k) (note: online edition)]).

Summary judgment is a drastic remedy that deprives a litigant of his or her day in court and should, thus, only be employed when there is no doubt as to the absence of triable issues of material fact (*Kolivas v Kirchoff*, 14 AD3d 493 [2005]; *see also Andre v Pomeroy*, 35 NY2d 361, 364 [1974]). "The proponent of a motion for summary judgment must make a prima facie showing of entitlement to judgment, as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact" (*Manicone v City of New York*, 75 AD3d 535, 537 [2010], quoting *Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]; *see also Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]; *Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]). If it is determined that the movant has made a prima facie showing of entitlement to summary judgment, "the burden shifts to the opposing party to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial of the action" (*Garnham & Han Real Estate Brokers v Oppenheimer*, 148 AD2d 493 [1989]).

Generally, to establish prima facie entitlement to judgment as a matter of law in an action to foreclose a mortgage, a plaintiff must produce the mortgage, the unpaid note, and evidence of default (*see Deutsche Bank Natl. Trust Co. v Karibandi*, 188 AD3d 650, 651 [2020]; *Christiana Trust v Moneta*, 186 AD3d 1604, 1605 [2020]; *Deutsche Bank Trust Co. Ams. v Garrison*, 147 AD3d 725, 726 [2017]).

12

Lender, in support of its motion for an order of reference, has demonstrated its prima facie entitlement to a judgment of foreclosure by submitting the note, the mortgage, evidence of the borrowers' defaults under the mortgage, proof of service of a copy of the summons and complaint[2] and proof of the facts constituting their cause of action for foreclosure (see *Bank of New York Mellon v Genova*, 159 AD3d 1009, 1010 [2018]). Lender also provided sufficient evidence of its standing to foreclose.

Defendants, in opposition, have failed to raise a credible issue of fact to preclude the relief that Lender seeks. Defendants' answer to the amended complaint with a counterclaim challenging the default interest rate charged does not affect the merits of Lender's motion for an order of reference, since defendants do not dispute the validity of the loan or their alleged defaults under the mortgage, including their failure to pay the balance of the loan upon its maturity on March 1, 2019. Defendants will suffer no prejudice if an order of reference is granted at this juncture, since defendants will have an ample opportunity to challenge the amount of principal and interest due and owing to Lender and the application of a default interest rate before the referee. Accordingly, it is

**ORDERED** that Lender's motion (mot. seq. three) is granted to the extent that: (1) a default judgment is granted against the non-answering and non-appearing defendants, pursuant to CPLR 3215, and (2) the appointment of a referee to compute the amount due

---

[2] Klar's conclusory claims that defendants did not receive the summons and complaint are unavailing and Lender's affidavits of service in the record constitute prima facie proof of service (see *Truscello v. Olympia Constr. Inc.*, 294 AD2d 350 [2002]).

to Lender under the mortgage is warranted and an order of reference shall be settled on notice; and it is further

**ORDERED** that defendants' cross motion (mot. seq. five) is granted and defendants' answer to the amended complaint is deemed to be interposed upon the service of this decision and order with notice of entry thereof.

This constitutes the decision and order of the court.

E N T E R,

J. S. C.

HON. LAWRENCE KNIPEL
ADMINISTRATIVE JUDGE